## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

---

| | |
|---|---|
| MARK LEVESQUE, CHRISTIE DECKER, MICHAEL PLATT, SYLVIA KRAININ, and SALLY TRUSSELL, Plaintiffs, | Case No. 2:19-cv-00389-JDL |
| v. | |
| IBERDROLA, S.A., CENTRAL MAINE POWER COMPANY, AVANGRID, INC., and DOUGLAS HERLING, of Bowdoin, Maine | |
| Defendants | |

---

### PLAINTIFFS' MOTION FOR SANCTIONS AGAINST
### DEFENDANT IBERDROLA, S.A.

Now come the Plaintiffs, and hereby move the Court, pursuant to ECF No. 139, and Federal Rules of Civil Procedure Rule 11 and Rule 37, and seek sanctions against Defendant Iberdrola, S.A. ("Iberdrola") for repeated discovery violations.  Specifically, Iberdrola violated this Court's Order when it provided incomplete and misleading material in its Factual Proffer, (ECF No. 93-4), Fed. R. Civ. P. 37(b)(2)(A), and has violated the discovery rules by failing to supplement or correct its incorrect, incomplete and misleading Factual Proffer and responses to Plaintiffs' Request for Admission. Fed. R. Civ. P. 26(e) and 37(c).  Iberdrola's false and misleading description of its role in SmartCare and its disregard for its discovery obligations have materially prejudiced Plaintiffs' ability to test Iberdrola's jurisdictional defense and have consumed more than a year of counsel's time at great expense to the parties and this Court.  Iberdrola has wagered that by misleading Plaintiffs about its role in SmartCare, it can evade this Court's jurisdiction, and thus responsibility for its active role in

SmartCare's failures. For this misconduct, which began on December 23, 2019 in the form of a false and misleading proffer, Plaintiffs seek sanctions against Iberdrola.

## 1. Introduction

When Iberdrola announced its intention to raise a jurisdictional defense, this Court ordered that Iberdrola "shall provide Plaintiffs with the factual bases for its personal jurisdiction challenge." (ECF No. 35.) From its later comments during one of several discovery dispute conferences necessitated by Iberdrola's intransigence on discovery, the Court made clear that it had envisioned Iberdrola's Factual Proffer as a way to "frame the issues and allow some discovery that is targeted." (ECF No. 112 at 2; Tr. Proceedings (Oct. 13, 2020) at 13:3-7). Self-evident in the Court's Order was that Iberdrola's Factual Proffer would be factually accurate and non-misleading. Despite the Court's clear intention that the Factual Proffer narrow the focus of jurisdictional discovery to allow for an expeditious testing of Iberdrola's jurisdictional defense, Iberdrola's actions were not conducive to achieving the Court's stated goal. Contrary to the Court's Order, we now know that Iberdrola's Factual Proffer contains factually incorrect and materially misleading statements about the nature and extent of Iberdrola's role in SmartCare in Maine. Specifically, Iberdrola falsely claimed that "***the only Iberdrola employees that appear to have had any connection to the project at all*** were Ignacio Canales and Jaime Macias Gonzalez." ECF No. 93-4 at ¶ 11. Iberdrola also stated that it had "virtually no involvement in the design or implementation of the [SmartCare] project." *Id.* These statements are demonstrably false, as set forth below. Months into discovery, Plaintiffs sought confirmation of Iberdrola's commitment to its representations in the Factual Proffer, and issued a request for admission asking whether Iberdrola formally admitted the contents of its Factual Proffer. Iberdrola did so, thus doubling down on its initial misleading assertions.

Iberdrola wants the Court to believe that this motion for sanctions stems from a mere "factual disagreement," as counsel argued at the recent February 17, 2021 telephonic hearing. This dispute

actually is about repeated and ongoing conduct that has misled Plaintiffs – and the Court – and has caused Plaintiffs material prejudice in this case.  Parties have an affirmative obligation not to mislead parties and they have an obligation to supplement responses.  *See* M. R. Prof. Conduct 3.3(a); Fed. R. Civ. P. 26(e)(2) and 37(c).  Iberdrola upheld neither obligation here.  Instead, as Plaintiffs now know, Iberdrola has engaged in jurisdictional discovery, a process designed specifically and exclusively to allow a party to explore the factual basis of another party's jurisdictional defense, in a manner designed to prevent the disclosure of contacts in and connections with the forum state.  Iberdrola's conduct is sanctionable.

### 2.  Iberdrola's Misleading Discovery Violations as Demonstrated by Recent Evidence

Iberdrola was under an affirmative Court Order to provide a factual basis to frame jurisdictional discovery so its Motion to Dismiss could be properly assessed by this Court.  *See* Fed R. Civ. P. 37(b).  Additionally, parties have an explicit and abiding obligation under the Federal Rules to correct or supplement discovery when it is determined to be inaccurate or incomplete. Fed. R. Civ. P. 26(e)(1) ("a party…must supplement or correct" incorrect or misleading discovery responses). Iberdrola has violated these obligations.  Iberdrola violated that Court Order when it produced its misleading Factual Proffer, which substantially misrepresented its contacts in Maine.  Iberdrola's misrepresentations about its limited role and the number of involved employees are patently false, as demonstrated by two pieces of evidence recently obtained by Plaintiffs: first, a 2015 CMP Capital Expenditure Plan (hereinafter referred to as "2015 Plan"), and second, the declaration of Valery Harris, a former Avangrid employee.  These documents were obtained by Plaintiffs following their submission of their opposition to Iberdrola's motion to dismiss, and have been submitted to the Court as attachments to a Notice of New Developments. (ECF No. 120).  Each will be discussed in turn.

a. **2015 Plan**

The 2015 Plan was composed or compiled by Iberdrola USA, which was the name of Defendant Avangrid at the time.  The Plan provides a detailed overview of the entire SmartCare project and states in no uncertain terms on its front page that the project was "**proposed by**" Iberdrola's Chief Information Officer Fernando Lucero ("Lucero") and Chief Financial Officer Jose Sainz Armada ("Armada").  (ECF No. 120-2 at 1) (emphasis added).  The Plan goes on to state, among many other things, that it "will be updated and re-presented to the Iberdrola Operating Committee for full approval before project launch."  *Id.* at 9.  Iberdrola cannot legitimately argue that persons who "proposed" a project in any capacity can fairly be said to have never had "any connection to the project at all," as stated in Iberdrola's Factual Proffer and, by extension, its responses to requests for admission.  Nor could requiring the "full approval before project launch" by an established Operating Committee not qualify as involvement of Iberdrola personnel, as Iberdrola has represented.[1]   Any fair interpretation of the document leads to the ineluctable conclusion that multiple C-suite executives at Iberdrola, as well as its "Operating Committee," were deeply involved in the project and should have been identified by Iberdrola as having proposed the project, and as having the power and responsibility of "full approval before project launch."  This information makes clear Iberdrola's active role in the project and its control over its subsidiaries concerning the SmartCare project and strongly supports this Court's exercise of specific jurisdiction over Iberdrola. *See also* Plaintiffs' Opposition to Iberdrola's Motion to Dismiss (ECF No. 118).  There is no doubt that the Plan demonstrates the involvement of specific key Iberdrola personnel, which were withheld from Iberdrola's Factual Proffer and discovery responses, to the direct detriment of Plaintiffs' efforts to controvert Iberdrola's arguments.

---

[1] It is clear that the reference to "Iberdrola" refers to Iberdrola, S.A., the Spanish parent company, and not Iberdrola USA, which was Defendant Avangrid's corporate name until late 2015.  Iberdrola USA is referred to as "IUSA" in the 2015 Plan, presumably to distinguish it from its parent, "Iberdrola," referring to Iberdrola, S.A.

Plaintiffs anticipate that Iberdrola will attempt to construe the 2015 Plan as "merely" a budget document that lays out some general plans or proposals that falls within the normal parent-subsidiary relationship.  The scope of the 2015 Plan is not nearly so limited and Iberdrola's argument is undermined by the sweeping language of Iberdrola's Factual Proffer in which it stated unequivocally that "**the only Iberdrola employees that appear to have had any connection to the project at all** were [two low-level information technology employees working solely on integration]."  ECF No. 93-4 at ¶ 11.  At a minimum, the Factual Proffer should have explained that Iberdrola maintained some oversight functions of its subsidiaries' projects, such as SmartCare, that Lucero and Armada, and whomever else, were involved with the project, and that the Iberdrola Operating Committee had to approve the project before launch.  Iberdrola instead clung to the false contention that its personnel played no role.  Furthermore, the Plan makes clear the control that Iberdrola exercised over its subsidiaries' projects, including CMP and SmartCare.  Although reviewing budgets and timetables may be common to a parent-subsidiary relationship, Plaintiffs should have been entitled to explore Iberdrola's involvement in order to argue that proposing a large capital expenditure and reserving full approval rights for a multi-year projects to replace its subsidiaries' metering and billing systems with one designed to be fully integrated into its existing platform does not fall within the ambit of the passive oversight activities such as those Iberdrola claims its conduct was limited.

There is indeed every indication that the revelations in the 2015 Plan that highlight Iberdrola's intervention in SmartCare from proposal through launch are but the tip of the iceberg.  Under the surface, obscured from view by Iberdrola's discovery tactics, are untold numbers of emails, documents, or witnesses that can detail Iberdrola personnel's words and actions.  *See, e.g.,* ECF No. 93-2, an email from Lucero to Avangrid project personnel indicating that he does "not accept" a delay in SmartCare go-live and directing personnel to provide a plan to recover the delay; *see also* ECF No. 93-3, an email from Avangrid project leader Eric Bell discussing options for dealing with project

delays, discussing Lucero involvement, and discussing "escalating" the issues from Bob Kump (then-Avangrid CEO) and Sara Burns (then-CMP CEO) up to "ultimately" Armando Martinez Martinez (Iberdrola Director of Networks Business). It is against the backdrop of information like the referenced emails that it is clear that important and relevant information was withheld by Iberdrola and that Plaintiffs were prevented from obtaining such information during jurisdictional discovery. It is telling that of the most relevant documents and communications produced to date, ***none*** were produced by Iberdrola. In short, Iberdrola was ordered to explain its role in Maine and SmartCare. It did not. Instead, Iberdrola produced thousands of irrelevant documents pertaining to other projects without producing responsive documents relevant to this inquiry, and then repeatedly complained about the burden of the production resulting from its obstructionist behavior.

### b. Declaration of Valery Harris

Ms. Harris's statements will not be reproduced here but are incorporated by reference. *See* ECF No. 120-1. In short, Ms. Harris directly controverts Iberdrola's factual assertions in several ways, including by setting forth her knowledge that Iberdrola had at least six personnel working in Maine and working at least in part on SmartCare. *Id.* at ¶¶ 5-6. She personally processed reimbursements paid by CMP/Avangrid to Iberdrola for Iberdrola's own employees who were in Maine working on the project. *Id.* at ¶¶ 7-9. She states that Iberdrola selected the key technical assistant consultants for the project, and exercised direct and comprehensive oversight and approval of expenditures for SmartCare, and directly impacted project schedules, timetables, and quality through its control over resources. *Id.* at ¶¶ 10-20. She also states that Lucero was deeply involved with the SmartCare project. *Id.* at ¶ 21. These statements bluntly undermine Iberdrola's original and ongoing factual assertions.

### 3. Iberdrola's Failure to Amend or Supplement Has Materially Prejudiced Plaintiffs

Had Iberdrola drafted or corrected its Factual Proffer to reflect the realities of Iberdrola's role in SmartCare as its investigation and discovery unfolded, this motion would not be necessary. Not

only was no supplementation or amendment made, but Iberdrola magnified this misleading position in its responses to requests for admission (wherein it admitted that the statements in its Factual Proffer were true), and then included the same misleading representations verbatim in its Declaration in support of its Motion to Dismiss. (ECF No. 84-1).

The prejudice that flows from Iberdrola's false assertions, early misdirection and persistent obfuscation has come now into sharp focus. Plaintiffs' jurisdictional discovery requests naturally were devised around Iberdrola's Factual Proffer, a reliance utterly consistent with the Court's view of the purpose of the Proffer. Quite literally, Plaintiffs would have made different – and, indeed, far fewer – requests of Iberdrola and those requests would have been more focused to materials that were actually relevant to Iberdrola's forum state contacts. Indeed, by stating and repeating loudly, clearly, and affirmatively that only two persons had any connection to the project at all, Iberdrola misled Plaintiffs and pointed them away from evidence that the Court had intended to guide jurisdictional discovery. Plaintiffs had no indication of who was involved. Iberdrola unilaterally determined the handful of custodians whose electronic information would be searched; Plaintiffs had no say in it and, more importantly, no basis to contest it because they were bound by the assumption that Iberdrola was truthful in its representations. Plaintiffs' written discovery requests relied on these same misleading statements. Iberdrola's initial misdirection caused discovery to proceed in a manner of its choosing, thereby avoiding the real issue – Iberdrola's exercise of control over its subsidiaries in Maine with respect to SmartCare. Having withheld names and roles of involved personnel, which led Plaintiffs astray by forcing them to issue broad requests, Iberdrola has since complained mightily that it had already done too much discovery and should not be compelled to do more.

Plaintiffs anticipate that Iberdrola will argue that there was no prejudice because Plaintiffs did not believe Iberdrola's statement that no one else was involved, as evidenced by Plaintiffs pressing

ahead with discovery.  This argument is a complete red herring.[2]  Whether or not plaintiffs believed generally that other Iberdrola personnel were involved in SmartCare is not the point.  The point is that Iberdrola's false assertions and misdirection prejudiced **how** Plaintiffs conducted discovery.  It effectively prevented Plaintiffs from exploring Iberdrola's contacts that are squarely relevant to the court's determination of the motion to dismiss, such as Lucero and untold others.  There is no way to know exactly how discovery would have unfolded had Iberdrola been forthright, but it is certain that it would have unfolded much differently.  In any event, Plaintiffs' suspicion should not be a basis to overlook repeated discovery violations, just as misleading statements and conduct should not be rewarded with the perpetrator's preferred disposition of the matter about which they misled.

Instead of relying on its sweeping denials, Iberdrola could have acknowledged the truth about the extent of its involvement with the project and then presented its jurisdiction defense.  Instead, it produced demonstrably untrue statements, statements that have been deemed to be incorrect many months and many attorney hours after their production.  According to its Declaration, three of the five custodians selected by Iberdrola, who were selected as custodians presumably because they nominally sat on a SmartCare Steering Committee, did not even participate in a single Steering Committee meeting.  (ECF No. 84-1, ¶ 22.)  This begs the obvious questions of why these individuals were chosen and why Iberdrola so resisted any additional custodians, including senior executives who we now know had hands-on involvement with the project.  With the benefit of Valery Harris' Declaration and the 2015 Plan, the answer is unavoidable: Iberdrola did not want to produce information that showed the true degree of its involvement and instead continued to argue it had done so much already in response to Plaintiffs' discovery.   It is notable that Iberdrola has always focused on having done too much discovery already and has never argued that additional discovery would not

---

[2] Plaintiffs' reluctance to believe that the seventh largest utility company in the world could not produce substantive emails about a massive undertaking such as CMP's SmartCare project—a project that would serve as a model for future Iberdrola-sponsored endeavors—is not relevant to this motion.

lead to relevant evidence. The full extent of the involvement of Lucero, Armada, Martinez, Sergio Merchan, and others about whom Plaintiffs would have sought targeted discovery from the beginning remains a mystery to Plaintiffs and the Court to this day.

### 4. Request for Relief

Plaintiffs submit that they have demonstrated good cause for sanctions against Iberdrola. A discovery sanction must be "just" and it must relate to a "claim" at issue in the discovery dispute. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 707 (1982). In the context of jurisdictional discovery, the Supreme Court has upheld as valid the sanction of denying a motion to dismiss when the defendant's discovery violations thwarted the plaintiff's ability to establish the full extent of the defendant's forum state contacts. *Id.* at 709. This sanction is permissible and particularly appropriate where the failure to produce the requested information supports the "presumption that the refusal to produce evidence" amounts to an "admission" that the personal jurisdictional defense is without merit. *Id.* (citation and quotation marks omitted.). This sanction is "commensurate with non-compliance" such that the position of the party prejudiced by the discovery violations is restored to that which it would have enjoyed had the evidence been produced and is thus appropriate. *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 220 (S.D.N.Y. 2013). This sanction is appropriate here because Iberdrola thwarted Plaintiffs' efforts to understand its contacts with the forum at every turn, violating the Court Order and failing to supplement its incorrect and incomplete responses. Plaintiffs therefore ask that this Court deny Iberdrola's motion to dismiss, which is an appropriate sanction under the circumstances and given the information that has come to light because it is commensurate with Iberdrola's transgressions.

Should this Court be disinclined to deny the motion to dismiss as a sanction, Plaintiffs ask that this Court order additional document production from CMP/Avangrid regarding Iberdrola personnel working on SmartCare in Maine and communications with Iberdrola, with attendant costs and fees to

be paid by Iberdrola. CMP/Avangrid has already demonstrated that their ESI retention is not nearly as limited as Iberdrola's purports its policy to be, thus a great deal of relevant and responsive information likely is readily available.

Plaintiffs ask that, at the very minimum, this Court formally allow the consideration of the Harris Declaration and the 2015 Plan (ECF Nos. 120-1, 120-2) as part of the record in support of Plaintiffs' opposition to Iberdrola's motion to dismiss. As noted above, these documents were obtained by Plaintiffs after the opposition filing date had passed. Plaintiffs request that the documents be included in the motion to dismiss record along with either this motion or a two-page supplement for Plaintiffs to outline the relevance of these two documents as they pertain to Iberdrola's motion to dismiss.

Finally, should this Court determine that Iberdrola deliberately misled Plaintiffs in this matter, the Court should default Iberdrola as to the claims against it as that would be the appropriate sanction. *See Big Top USA, Inc. v. Wittern Grp.*, 183 F.R.D. 331, 339-40 (D. Mass. 1998).

WHEREFORE, Plaintiffs pray that this Court GRANT Plaintiffs' motion for sanctions and grant the relief requested herein.

Respectfully submitted,

*/ s/ Cyrus E. Cheslak*
Philip M. Coffin III, Bar No. 2462
Jeffrey D. Russell, Bar No. 4506
Cyrus E. Cheslak, Bar No. 6171
Lambert Coffin
Two Monument Square, Suite 400
PO Box 15215
Portland, Maine 04101
207-874-4000
pcoffin@lambertcoffin.com
jrussell@lambertcoffin.com
ccheslak@lambertcoffin.com

James E. Belleau, Bar No. 8314
Alex S. Parker, Bar No. 6167

Trafton, Matzen, Belleau & Frenette, LLP
10 Minot Avenue
Auburn, Maine 04212-0470
207-784-4531
JBelleau@TMBF-law.com
Aparker@TMBF-law.com

Sumner H. Lipman, Bar No. 300
Law Offices of Sumner Lipman, LLC
PO Box 836
Scarborough, Maine 04070
207-806-5006
SumnerLipman@gmail.com

*Counsel for Plaintiffs*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused a copy of the foregoing to be served by way of the ECF system, which will send notice of such filing to all counsel of record.

Dated at Portland, Maine, this 26th day of February 2021.

/ s/ *Cyrus E. Cheslak*
Cyrus E. Cheslak
Attorney for Plaintiffs

**LAMBERT COFFIN**
Two Monument Square, Suite 400
P.O. Box 15215
Portland, ME  04112-15215
(207) 874-4000
ccheslak@lambertcoffin.com

12