UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARK LEVESQUE, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 2:19-cv-00389-JDL |
| | ) | |
| IBERDROLA, S.A., et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs assert claims against Defendants Iberdrola, S.A. ("Iberdrola"), Central Maine Power Company ("CMP"), and Avangrid, Inc. ("Avangrid"), and Douglas Herling related to the implementation and operation of the "SmartCare" metering and billing system.  (Third Amended Complaint, ECF No. 44.)

The matter is before the Court on Plaintiffs' motion for sanctions against Defendant Iberdrola. (Motion, ECF No. 142.)  Through their motion, Plaintiffs ask the Court to sanction Iberdrola for alleged discovery violations during a period of jurisdictional discovery.

Following a review of the record and after consideration of the parties' arguments, the Court denies Plaintiffs' motion.

**BACKGROUND**

**A.      Iberdrola's Factual Proffer**

Following a conference with counsel on November 22, 2019, the Court entered a procedural order that, in part, granted Plaintiffs leave to file a third amended complaint.[1] (Procedural Order ¶ 3, ECF No. 35.)  During the conference, Iberdrola advised that it intended to file a motion to dismiss the complaint for lack of personal jurisdiction.  The Court authorized discovery on the jurisdictional issue.  To help focus the discovery on the relevant jurisdictional issues, the Court directed Iberdrola to "provide Plaintiffs with the factual bases for its personal jurisdiction challenge."  (*Id.* ¶ 7.)

On December 23, 2019, Iberdrola provided Plaintiffs with a factual proffer in support of its anticipated motion to dismiss for lack of personal jurisdiction. (Factual Proffer, ECF No. 147-1.)  Iberdrola represented that the proffer was "based on a preliminary examination of the SmartCare project and its investigation to date."  (*Id.* at 1.)  The proffer, in part, included information regarding Iberdrola's corporate structure and relationship with its subsidiaries, including the corporate defendants in this matter.  (*Id.* ¶¶ 1-10.)  Iberdrola asserted that CMP first assessed the design and implementation of the SmartCare project in 2012 and that the project began in 2015.  (*Id.* ¶ 12.)

Additionally, in the Factual Proffer, Iberdrola stated that it "had virtually no involvement in the design or implementation of the [SmartCare] project," and that it "ha[d] not identified any information showing that its employees played any role in the customer service aspect of the design or implementation of the SmartCare program."  (*Id.* ¶¶ 11, 24.)  Iberdrola also asserted that "the only Iberdrola employees that appear to have had any

---

[1] Plaintiffs had previously filed a complaint and two amended complaints in state court.  (Complaint, ECF No. 1-1; Amended Complaint, ECF No. 1-2; Second Amended Complaint, ECF No. 1-6.)

connection to the project at all were Ignacio Canales and Jaime Macias Gonzalez." (*Id.* ¶

11.) Iberdrola stated that

> [n]either Mr. Canales nor Mr. Macias Gonzalez played a role in the design
> or implementation of SmartCare. Rather, their roles were focused on
> integration – not implementation – of the [Central Maine Power] system with
> the global Iberdrola platform. In other words, the extent of their involvement
> was in "back office" integration rather than in the design or implementation
> of anything that could be considered customer-facing.

(*Id.*)

Mr. Canales was one of thirteen members on the SmartCare project's "Steering

Committee."[2] (*Id.* ¶ 16.) He "resided in Spain and participated in Steering Committee

Meetings remotely and infrequently." (*Id.* ¶ 17.) His "role with respect to SmartCare was

to track the project on behalf of Iberdrola and ensure the project remained on track to meet

budget and proceed on schedule." (*Id.* ¶ 18.) Iberdrola asserted that "Mr. Canales played

no role in the substantive development or implementation of SmartCare." (*Id.*)

Mr. Macias Gonzalez was part of the SmartCare project's "lead team" and also

"infrequently participated in Steering Committee meetings." (*Id.* ¶¶ 19, 23.) According to

the proffer, Mr. Macias Gonzalez "relocated to Maine for a period of time to assist with

the project and reported to Mr. Canales." (*Id.* ¶ 20.) He "did not report to anyone at

Iberdrola other than Mr. Canales, and with respect to the SmartCare project, Mr. Macias

---

[2] According to the Factual Proffer, the Steering Committee

> was tasked with monitoring strategic priorities for the project, demonstrating project
> sponsorship, reviewing and accepting project status updates at regular intervals, and
> securing appropriate project resources. The Steering Committee did not exercise decision-
> making authority and instead provided a forum for the project team to provide
> informational status updates to various stakeholders on the progress of the SmartCare
> project. The Steering Committee generally met on a weekly basis.

(Factual Proffer ¶ 15, ECF No. 147-1.)

Gonzalez reported to [a CMP employee]." (*Id.*)  Mr. Macias Gonzalez acted as "the local resource for CMP to interface with IBM's software development team in Spain" and his "responsibility was to ensure IBM was devoting the proper resources to CMP's project . . . and to ensure that CMP's technology experts could properly coordinate with the IBM software factory leads responsible for various aspects of the SmartCare software design." (*Id.* ¶ 21.)  Iberdrola further asserted that "Mr. Macias Gonzalez played no role in designing the functional specifications that went to IBM, or in reviewing or approving the technical specifications that IBM developed in response." (*Id.* ¶ 22.)

**B.     Jurisdictional Discovery and Motion to Dismiss**

On January 31, 2020, Plaintiffs filed their third amended complaint. (Third Amended Complaint, ECF No. 44.)  Although jurisdictional discovery originally was to be completed by February 21, 2020, the Court permitted the parties to engage in discovery beyond that date due, in part, to the resolution of various discovery disputes.  (Discovery Orders, ECF Nos. 35, 49, 60, 64.)  After a July 2020 conference with counsel to discuss several discovery issues related to the scope of permissible discovery on Defendant Iberdrola's personal jurisdiction defense, the Court ordered Iberdrola "to file its motion to dismiss for lack of personal jurisdiction," reasoning that the "motion would define [Iberdrola's] jurisdictional challenge and permit an assessment of [the scope of permissible jurisdictional discovery] in the context of [Iberdrola's] argument [on jurisdiction.]"  (Order on Discovery Issues, ECF No. 75.)

On August 7, 2020, Iberdrola filed its motion to dismiss for lack of personal jurisdiction.[3] Fed. R. Civ. P. 12(b)(2). (Motion, ECF No. 84.) Through its motion, as in its Factual Proffer, Iberdrola maintained that it "had virtually no involvement in either the decision to implement SmartCare or the ultimate design or implementation of the project," and that Mr. Canales and Mr. Macias Gonzalez were the "only Iberdrola employees to have had any notable connection to the project," and they "played no role in the design or implementation of SmartCare." (*Id*. at 8.)

Following an August 13, 2020, telephonic conference with the parties, the Court authorized additional jurisdictional discovery, which required Iberdrola to produce certain documents and to identify "Defendant's officers, executives, representatives and employees, who, to Defendant's knowledge, traveled to Maine from October 1, 2014 through December 31, 2018." (Order on Discovery Issues/Procedural Order, ECF No. 89.) In October 2020, following another telephonic conference with the parties regarding a discovery issue, the Court ordered Iberdrola to "file a report that states (1) the time necessary to search its records for the additional search term discussed (and its derivatives) using the current custodians, and (2) the time necessary to obtain and any logistical impediments to obtaining the items required to conduct a search with an additional custodian (Fernando Lucero)." (Order on Discovery Issues, ECF No. 97.) In November 2020, the Court ordered Iberdrola to produce additional documents in response to Plaintiffs' request for documents. (Order on Discovery Issues, ECF No. 103.)

---

[3] Iberdrola's motion to dismiss also sought dismissal of Plaintiffs' complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

In December 2020, Plaintiffs filed a motion for leave to take depositions of three former Avangrid employees who, according to Plaintiffs, could provide information related to "Iberdrola's role in SmartCare and its control over CMP and Avangrid."  (Motion, ECF No. 110.) The Court denied Plaintiffs' motion.  (Order, ECF No. 119.)  On January 14, 2021, Plaintiffs responded to Iberdrola's motion to dismiss, asserting additional alleged involvement of Iberdrola in the SmartCare program beyond the involvement identified in the Factual Proffer.  (Response at 2-12, ECF No. 118.)

**C.     Motion for Sanctions**

On January 22, 2021, Plaintiffs filed with the Court a "Notice of New Developments," in which Plaintiffs identified two documents they assert they obtained after filing their response to Iberdrola's motion to dismiss.  (Notice/Correspondence, ECF No. 120.)  One document was the sworn declaration of Valery Harris, a former Avangrid employee who had worked in Avangrid's treasury department. (Exhibit ("Harris Declaration"), ECF 120-1.)  Ms. Harris stated, in part, that "Iberdrola had at least 6 personnel based in Maine for substantial periods of time" and that the personnel had worked on the SmartCare project.  (*Id.* ¶¶ 6-7.)  The second document was a "2015 Capital Expenditure Plan" proposed by Iberdrola executives that related to the SmartCare program. (Exhibit ("2015 Plan"), ECF No. 120-2.)  Plaintiffs maintained that the documents "show Iberdrola's involvement in and control over" the SmartCare project and "are highly relevant to the Court's consideration of" Iberdrola's motion to dismiss. (Notice/Correspondence at 2.)  Iberdrola objected to the documents on January 28, 2021,

arguing, in part, that the information contained in each document was not "new."[4] (Objection, ECF No. 126.)

On February 17, 2021, the Court conducted a telephonic conference to address Plaintiffs' request for leave to file a motion for sanctions based on Iberdrola's representations in the Factual Proffer and its response to certain discovery requests. Plaintiffs argued that Iberdrola's proffer and response to a request for admissions were factually inaccurate and incomplete, and that as a result, Plaintiffs were prejudiced in that they had to expend considerably more resources in discovery.  The Court granted Plaintiffs leave to file a motion for sanctions.  (Procedural Order, ECF No. 139.)

## DISCUSSION

Plaintiffs argue that Iberdrola committed two discovery violations and ask the Court to impose sanctions.  First, Plaintiffs contend that Iberdrola violated the Court's November 25, 2019, procedural order, arguing that the "Factual Proffer contains factually incorrect and materially misleading statements about the nature and extent of Iberdrola's role in SmartCare in Maine."  (Motion at 1-2, ECF No. 142.)  Second, Plaintiffs argue that Iberdrola failed to supplement or correct the allegedly inaccurate assertions in its Factual Proffer and reiterated the information in response to Plaintiffs' requests for admission.  (*Id*.) In support of their contentions, Plaintiffs point to and argue that the Harris Declaration and

---

[4]  Iberdrola asserted that Plaintiffs had previously sought leave to take Ms. Harris's deposition and that the 2015 capital expenditure plan was a document filed as part of the Maine Public Utilities Commission's investigation into the SmartCare program. (Objection, ECF No. 126.)  As noted, the Court denied Plaintiffs' motion for leave to take depositions, including a deposition of Ms. Harris.  (Order, ECF No. 119.)

the 2015 Plan demonstrate that Iberdrola's assertions about its role in the SmartCare program were not accurate.  (*Id*. at 3.)

As a sanction, Plaintiffs ask the Court to deny Iberdrola's pending motion to dismiss.  (*Id*. at 9.)  Alternatively, Plaintiffs request that the Court "order additional document production from CMP/Avangrid regarding Iberdrola personnel working on SmartCare in Maine and communications with Iberdrola" or, at minimum, consider the Harris Declaration and the 2015 Plan "as part of the record in support of Plaintiffs' opposition to Iberdrola's motion to dismiss."  (*Id*. at 9-10.)

Iberdrola contends its Factual Proffer was accurate and served its purpose of "set[ting] a basis to guide Plaintiffs in discovery."  (Response at 4-5, ECF No. 147.) Iberdrola further argues that the proffer was not misleading, arguing that the additional Iberdrola employees whom Plaintiffs have identified as being involved in the SmartCare program—in addition to Mr. Macias Gonzalez and Mr. Canales—were only involved in "ministerial" roles that included "budgeting and scheduling issues."  (*Id*. at 8.)  As to the Harris Declaration, Iberdrola argues that Ms. Harris' statements pertain to Iberdrola's "oversight of its subsidiaries' expenditures," but do not identify by name any Iberdrola employees who worked on the SmartCare program.  (*Id*. at 7-8.)  As to the 2015 Plan, which Iberdrola asserts is "a form investment document," Iberdrola contends the Plan is "proof of Iberdrola's limited, budgetary oversight" and is not inconsistent with Iberdrola's contentions throughout discovery that it has "engaged in oversight of SmartCare's budgeting and scheduling."  (*Id*. at 5-7.)

Federal Rule of Civil Procedure 37 authorizes the imposition of sanctions against a party for failure to cooperate in discovery. In relevant part, a court may sanction a party "[i]f a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Rule permits the imposition of various sanctions, including, as Plaintiffs request here, the entry of an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."[5] Fed. R. Civ. P. 37(b)(2)(A)(i); *see Ins. Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 709 (1982) (holding that a court did not abuse its discretion in finding personal jurisdiction over a party as a sanction under Rule 37(b)(2)(A)). A court "may impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015). "The totality of the circumstances should be considered when assessing the appropriateness of a discovery sanction." *Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012).

---

[5] The possible sanctions under Rule 37(b)(A) include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

To determine whether the requested sanctions against Iberdrola are warranted, the Court must first determine whether Iberdrola has, in fact, "fail[ed] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). In the November 25, 2019, Procedural Order, the Court ordered Iberdrola to "provide Plaintiffs with the factual bases for its personal jurisdiction challenge." (Procedural Order ¶ 7, ECF No. 35.) In its Factual Proffer, Iberdrola maintained that it "had virtually no involvement in the design or implementation" of the SmartCare project and that only Mr. Canales and Mr. Macias Gonzalez were involved in the "integration . . . of the CMP system with the global Iberdrola platform." (Factual Proffer at 4-5.) In its response to Plaintiffs' request for admission, Iberdrola subsequently confirmed the accuracy of the information in the proffer. In its response to Plaintiffs' motion for sanctions, Iberdrola reiterated its assertion that any additional Iberdrola employees involved in the SmartCare program worked in "ministerial" roles and that only Mr. Canales and Mr. Macias Gonzalez were involved in a "material degree." (Response at 8-9, ECF No. 147.)

The documents upon which Plaintiffs rely to support their request for sanctions do not definitively establish that Iberdrola provided misleading or inaccurate information in the Factual Proffer or in its response to Plaintiffs' discovery request. As the parties' arguments demonstrate, the significance of the 2015 Plan to the jurisdictional issue is disputed. Furthermore, whether the Harris Declaration conflicts with Iberdrola's assertions requires an assessment of the content of the declaration in the context of the entire jurisdictional record and the merits of the parties' jurisdictional arguments. Regardless of the significance of the Harris Declaration to the jurisdictional issue, the general nature of

some of the assertions in the declaration (e.g., unspecified "personnel were working on SmartCare") and the recitation of the defendants' budgetary approval process do not constitute sufficient evidence upon which the Court can conclude that Iberdrola intentionally misrepresented information in response to a court order or Plaintiffs' discovery request. *See R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 17 ("[U]nless the failure of discovery is absolute, or nearly so, Rule 37(b)(2) sanctions are unripe.")

While the Court finds no basis for sanctions, the Court recognizes that Plaintiffs believe the 2015 Plan and the Harris Declaration are relevant to the motion to dismiss. As one of their alternative requests for relief on the motion for sanctions, Plaintiffs asked the Court to allow them to supplement the record with the documents. In its response to the motion for sanctions, Iberdrola asserted it would not have opposed the inclusion of the documents in the motion to dismiss record had Plaintiffs requested an opportunity to supplement the record. (Response at 10.)

The Court will consider whether to grant Plaintiffs leave to supplement the motion record independent of the request for sanctions. Iberdrola shall notify the Court and Plaintiffs on or before April 23, 2021, whether it objects to including the documents in the motion record. If Iberdrola objects, the Court will schedule a telephonic conference to discuss whether the documents will be included as part of the motion record.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiffs' motion for sanctions. On or before April 23, 2021, Iberdrola shall notify the Court and Plaintiffs whether it

objects to the inclusion of the Harris Declaration and the 2015 Plan in the motion to dismiss record.

## **NOTICE**

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 16th day of April, 2021.